UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY JOE SPENCER,<br><br>           Plaintiff,<br><br>     v.<br><br>P.D. BRAZELTON & R. OLAES,<br><br>           Defendants. | CASE NO. 1:14-cv-0707-MJS<br><br>ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A COGNIZALBE CLAIM<br><br>(ECF NO. 1)<br><br>AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |

## SCREENING ORDER

**I.   PROCEDURAL HISTORY**

Plaintiff Billy Joe Spencer, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 12, 2014. (ECF No. 1.) His complaint is now before the Court for screening.

**II.   SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail "to state a claim upon

which relief may be granted," or that "seek monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.     SUMMARY OF COMPLAINT

Plaintiff identifies P.D. Brazelton, Warden of the Pleasant Valley State Prison ("PVSP"), and Captain R. Olaes as the Defendants. Plaintiff's allegations can be summarized essentially as follows:

On August 19, 2012, a Crip gang riot occurred at PVSP. (ECF No. 1 at 5.) As a result, on August 20, 2012, the prison administration placed Crip gang members and their cellmates on lockdown or "confinement to quarters" ("CTQ") status. (*Id.* at 5-6.) Without a prior opportunity to be heard, Plaintiff and his cellmate were placed on CTQ status from August 20th to August 30, 2012. (*Id.* at 5, 9.)

On August 22, 2012, Plaintiff filed a request for an interview with the Gang Coordinator, alleging that his Central File ("C-File") falsely labeled him as a Crip and requesting that the error be corrected. (*Id.* at 7.) Plaintiff filed the same request with Defendants Brazelton and Olaes on August 24, 2012. (*Id.* at 5, 8-9.) The Gang Coordinator and Defendants violated the California Code of Regulations ("CCR") and the California Department of Corrections and Rehabilitation Department Operations Manual ("DOM") by failing to timely respond to Plaintiff. (*Id.* at 7-9.)

On August 30, 2012, after being released from CTQ status, Crip gang members approached Plaintiff and asked why he had not been attending gang meetings. Plaintiff informed them that he was not a Crip gang member, and they responded "we'll get at You, later cuzz." (*Id.* at 9.) On September 1, 2012, Plaintiff was attacked and sexually assaulted by Crip gang members. (*Id.* at 6, 9-10, 14.) The assault occurred because the Crips believed that since Plaintiff had been placed on CTQ status with the other Crip

2

gang members and their cellmates, he was a member of their gang who had failed to attend gang meetings. (*Id.*)

On September 5, 2012, not having a response from Defendants or the Gang Coordinator, Plaintiff filed follow-up grievances. (*Id.* at 8-9.) Defendants' gave belated responses and downplayed their actions, characterizing Plaintiff's placement on CTQ status as a mistake or a result of his cellmate being a Crip gang member.

In summary, Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by negligently placing him on CTQ status, failing to respond to his grievances, and by failing to timely correct his mistaken identification as a Crip gang member, all of which led directly to the assault on him. Plaintiff seeks monetary and punitive damages for his physical and emotional injuries.

## IV.  ANALYSIS

### A.  Section 1983

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (*quoting* 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker* v. *McCollan*, 443 U.S. 137, 144, n. 3 (1979)).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ketchum v. Cnty. of Alameda*, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. *Id.*

### B.    The CCR & DOM Violations

Plaintiff alleges that Defendants' conduct violated Title 15 of CCR Section 3086(a)(4)(A)-(D) and Section 54090.4.3-4 of the DOM because they failed to timely respond to Plaintiff's request for an interview and grievance forms, and they failed to maintain copies of his grievances.[1]

The mere existence of the CCR and DOM does not create a civil cause of action for violation of their terms. *See e.g., Cousins v. Lockyer,* 568 F.3d 1063, 1070 (9th Cir. 2009) ("state departmental regulations do not establish a federal *constitutional* violation"); *Vasquez v. Tate*, No. 1:10-cv-1876-JLT (PC), 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); *Davis v. Powell*, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012). The Court has found no authority for an implied private right of action for violation of the referenced provisions of the CCR or DOM, and Plaintiff has provided none. Since no independent claim for violation of these prison regulations exists, leave to amend such a claim would be futile, and thus is denied.

### C.    State Law Negligence Claim

Plaintiff alleges that Defendants were negligent in: 1) not responding to his requests and grievances in accordance with the CCR and DOM, 2) placing him in CTQ status and failing to protect him from being sexually assaulted, and 3) failing to keep proper records of his grievances.

---

[1] Based on Plaintiff's description of the alleged violations, it appears that the correct section of the CCR that he believes Defendants violated is Section 3086(f)(4)(A)-(D).

Under the California Tort Claims Act ("CTCA"), Plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. *State of California v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1240 (2004).

Plaintiff concedes that his state law negligence claim was dismissed because he failed to comply with the requirements of the CTCA. (ECF No. 1 at 11-12, 65-72, 96.) Therefore, his negligence claim necessarily fails here, and he will be denied leave to amend it.

**D.     CTQ Status**

Lastly, Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated when he was erroneously labeled a Crip and placed on CTQ status.

> 1. <u>Eighth Amendment</u>

The Eighth Amendment "protects prisoners . . . from inhumane methods of punishment . . . [and] inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and severe, prison officials must provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). They also have a duty to take reasonable steps to protect inmates from physical harm by other inmates. *Id.* at 833.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's health or safety. *Id.* at 834. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "'If a [prison official] should have been aware of the

risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* at 1057 (*quoting Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837; *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842.

Plaintiff's pleadings do not raise an Eighth Amendment claim. There are no allegations that Defendants knew of the risk posed by the Crip gang members and disregarded it or knew that the attack was occurring and failed to prevent it. It is unclear whether Plaintiff's requests for interviews were received by Defendants prior to the attack on September 1, 2012, but even if they had been, they would not have put Defendants on notice of any serious threat to Plaintiff's safety; they merely advised Defendants of Plaintiff's belief that his C-File falsely labeled him a Crip gang member. Plaintiff does not allege that he informed anyone, let alone Defendants, about the encounter with the Crip gang members. Even if he had, he does not indicate how giving notice of the verbal altercation would have put Defendants on notice that he faced a substantial risk of serious harm. Based on these facts, Plaintiff has not stated an Eighth Amendment claim.

The Court will grant Plaintiff leave to amend. Any amended complaint must fully address the above issues and omissions and explain the circumstances underlying Plaintiff's claim in more detail. The facts alleged must demonstrate that each Defendant knew of and knowingly disregarded an excessive risk of harm to Plaintiff.

### 2. Fourteenth Amendment Due Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. *Id.* Liberty interests may arise from the Due Process Clause or from state law. *Id.* The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, *id.* at 221-22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue, *id.* at 222-23 (*citing Sandin v. Conner*, 515 U.S. 472, 481-84 (1995)). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.*; *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Whether prison conditions give rise to a protected liberty interest requires an evaluation of (1) whether the challenged conditions mirror those imposed under the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). In applying these factors, courts have previously held that plaintiffs have no liberty interest protecting against a 30-day assignment to disciplinary segregation or a five-month lockdown instituted for attacks on inmates. *See Sandin*, 515 U.S. at 485; *see also Hayward v. Procunier*, 629 F.2d 599, 601 (9th Cir. 1980). On the other hand, courts have held that a protected liberty interest exists in an inmate's solitary confinement for twenty-seven months without periodic, material review and a disabled inmate's confinement in a non-handicapped accessible administrative housing unit. *See Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987-88 (9th Cir. 2014); *see also Serrano*, 345 F.3d at 1078-79.

Plaintiff fails to state a due process violation against Defendants. He pleads nothing to support his conclusion that placement in CTQ imposed an "atypical hardship" or how the confinement affected his sentence. Contrary to Plaintiff's allegations, the documents attached to his complaint indicate that initially Crip inmates and their cellmates were only on a modified program that did allow movement, albeit escorted and in restraints. There is nothing before the Court to suggest that such a modified program is "atypical . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Plaintiff will be granted leave to amend. If contrary to the documents attached to his complaint, Plaintiff experienced a greater degree of restraint, he must allege what degree of restraint he experienced and facts to support his allegations. Additionally, he must allege how, if at all, his restraint affected his sentence.

Finally, to the extent Plaintiff contends that failing to properly process a grievance constitutes a due process violation, he is advised that prisoners have no stand-alone due process rights related to the administrative grievance process. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

## V.    CONCLUSION AND ORDER

Plaintiff's Complaint does not state a claim for relief. The Court will grant Plaintiff an opportunity to file an amended complaint. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. *Roth v. Garcia Marquez*, 942 F.2d 617, 628-629 (9th Cir. 1991). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an "amended complaint supersedes the original" complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint

no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

      Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form;
2. Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted;
3. Plaintiff shall file an amended complaint within thirty (30) days; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   January 6, 2015                    /s/ *Michael J. Seng*
                                                                  UNITED STATES MAGISTRATE JUDGE